### ALLEN et al. v. CREIGHTON et al.
#### No. 3502.

Court of Civil Appeals of Texas. Beaumont.
July 5, 1939.

Rehearing Denied July 12, 1939.

T. F. Green, Jr., of Conroe, and Kenneth Krahl, Steward & DeLange, Robert P. Beman, Jr., Emory T. Carl, and L. P. Lollar, all of Houston, for plaintiff in error.

Pitts & Liles and A. W. Morris, all of Conroe, for defendant in error.

WALKER, Chief Justice.

The appeal is by writ of error but the parties will be referred to as appellant and appellee. The purpose of the suit, filed on the 16th day of February, 1938, by the appellee, Gerald J. Creighton, against appellant, A. R. Allen, was to recover the royalty interest conveyed by the following instrument:

"The State of Texas⎫ Know All Men by
  County of Mont-⎬ These Presents:
gomery⎭

"That We, A. R. Allen and wife Janie Allen, of Montgomery County, Texas, for and in consideration of Ten ($10.00) Dollars and other valuable considerations to us in hand paid by Gerald J. Creighton, the receipt and adequacy of which consideration being hereby acknowledged and confessed,

"Have granted, bargained, sold and conveyed, and by these presents do hereby grant, bargain, sell, set over, convey and deliver, unto the aforesaid Gerald J. Creighton, the following described royalty interests, to-wit:

"One-eighth (⅛) of the usual one-eighth (⅛) royalty on oil and/or gas and

one-eighth (⅛) of the usual ⅛ royalties on each, any, and all other minerals that are in, on, or under, or which may be produced from the following described lands situated in Montgomery County, Texas, to-wit:

"All that certain tract, piece or parcel of land lying and being situated in Montgomery County, Texas, being out of and a part of the Lemuel Smith ⅔ League of land, and being more particularly described by metes and bounds as follows:—

"Beginning at A. R. Allen's NW corner, a stake set on N boundary line of the Lemuel Smith ⅔ League;

"Thence N 56 E with the N boundary line of said Lemuel Smith League 2402.4 ft. to stake set in said league line;

"Thence S 30 E 1537.8 ft. to a stake set in Allen's S boundary line;

"Thence S 60 W with Allen's S boundary line 2396.5 ft. to stake for corner same being Allen's SW corner;

"Thence N 30 W with Allen's W boundary line 1370. ft. to the place of beginning, containing 80 acres of land, together with any and all rights of ingress and egress at all times for inspecting all operations on said lands and for removing Grantee's separate portions after same has been produced, and for gauging and investigating any and all productions and dispositions of productions therefrom.

"The said above described lands are now under a mineral lease originally executed in favor of O. Etheridge and now owned by—————. Accordingly, it is agreed that this conveyance is subject to the terms of said lease. That this conveyance covers and includes one-eighth of the one-eighth of the royalty provided for oil and/or gas, and also one-eighth (⅛) of the ⅛ of each, any, and all other royalties for each, any and all other minerals provided for in said lease.

"It is stipulated that the said Grantee shall not participate in any of the rentals payable under said leases above referred to, nor shall Grantees be entitled to participate in any bonuses to lease said lands, or any part thereof, under any future leases, but that the same shall not cover any advance royalties, and that Grantee joint execution on any subsequent lease or leases containing provisions similar to said lease now in force shall not be necessary or required.

"To have and to hold the above described mineral interest, together with all and singular the rights and appurtenances in anywise belonging, unto the said Gerald J. Creighton his heirs, executors, administrators, successors and/or assigns forever; and we, the said A. R. Allen and wife, Janie Allen, do hereby bind ourselves, our heirs, executors and administrators, to warrant and forever defend, all and singular, the said premises unto the said Gerald J. Creighton, heirs and assigns, against every person whomsoever lawfully claiming, or to claim the same, or any part thereof.

"Witness our hands at Conroe, Texas, this 23d day of Dec. A. D. 1932.

"(Signed) A. R. Allen        ARA
"Mrs. Jannie Allen    JA."

On trial to a jury, judgment was in favor of appellee against appellant · for the sum of $2,905.99, and against the Normandie Oil Corporation for the sum of $953.78. On the hearing on motion for a new trial, permission was denied W. R. Allen to intervene. The appeal was regularly prosecuted to this court from the judgment of the lower court.

■ Appellant assigns that the instrument in issue was absolutely void, on the ground that the consideration paid by appellee to appellant was "legal services rendered and to be rendered." An interest in the land described in the royalty deed in issue was outstanding in appellant's brothers; he wanted that interest conveyed to him. Judge A. W. Morris, appellee's father-in-law, was appellant's attorney; he advised appellant in the necessary legal steps to secure the transfer, and prepared for him the necessary instruments. Appellee is not a lawyer. The facts do not support the assignment. Appellee rendered no legal services to appellant; the legal services were rendered by Judge Morris. Appellee furnished appellant transportation to the homes of his brothers, and aided him, not as a lawyer but simply as his agent, in making the trade—inducing his brothers to execute the instrument. The assignment is overruled.

■■ The second point presented is the construction of the royalty deed in issue: What interest in the royalty did this instrument convey to appellee? Appellee contends that it conveyed to him ⅛ of the ⅛ royalty interest; appellant contends that it conveyed only ⅛ of · ⅛ of the ⅛

royalty interest. A royalty deed, like all other instruments of conveyance, must be construed most favorable to the grantee, as conveying to him the largest estate within the words of conveyance. 31 Tex. Jur. 630; Clemmens et ux. v. Kennedy et al., Tex.Civ.App., Texarkana, 68 S.W.2d 321, error refused; Hoffman et al. v. Magnolia Petroleum Co. et al., Tex.Com.App., 273 S.W. 828, 829. The instrument expressly conveyed ⅛ of the ⅛ royalty interest—a 1/64 interest in the oil produced; the subsequent language of the instrument, purporting to describe the interest conveyed as only ⅛ of ⅛ of the ⅛ royalty must yield to the express language of conveyance.

■ Since he did not operate the leased premises and did not himself produce the oil which was charged with the royalty interest, appellant contends that he cannot be held for conversion and that he is not liable to appellee for the value of the royalty interest covered by the royalty deed. This contention is denied. The value of the royalty interest in the land, including appellee's interest, was paid by check to appellant by the producing company. Appellant accepted these checks in satisfaction of the royalty interest, and endorsed them to a third party. Appellee received no part of the proceeds, and his failure to receive his interest in the proceeds was due to the fact that appellant accepted and transferred, by his endorsement, the royalty checks. On this statement, appellant was liable to appellee for the amount of appellee's royalty appropriated by him— $2,905.99. Peavy-Moore Lbr. Co. v. First Nat'l Bank of Beaumont, Tex.Com.App., 128 S.W.2d 1158.

■ It was not error to refuse to submit to the jury the amount of royalty appropriated by appellant; that issue was established by the agreement of the parties and by the uncontroverted facts.

■ Judgment was also rendered in appellee's favor, as stated above, against the producing company, Normandie Oil Corporation, for the sum of $953.78; appellant assigns error against this part of the judgment. The assignment is overruled. This element of the judgment was between appellee and the Normandie Oil Corporation; in it appellant has no interest.

■ Special issues Nos. 1, 2, and 3, submitted to the jury and answered in the affirmative, were as follows:

Special issue No. 1: "Do you find from a preponderance of the evidence that the instrument introduced in evidence herein as Plaintiff's Exhibit No. 1, of date of December 23, 1932, was executed, acknowledged and delivered by A. R. Allen and wife, Jannie Allen,, to Gerald J. Creighton?".

Special issue No. 2: "Do you find from a preponderance of the evidence that Gerald J. Creighton was named as grantee in the instrument introduced in evidence herein as Plaintiff's Exhibit No. 1, of date December 23, 1932, at the time of the execution, acknowledgment, and delivery thereof by A. R. Allen and wife, Jannie Allen, to Gerald J. Creighton?"

Special issue No. 3: "Do you find from a preponderance of the evidence that at the time of the execution, acknowledgment, and delivery of the instrument introduced in evidence herein as Plaintiff's Exhibit No. 1, of date December 23, 1932, that the said A. R. Allen and wife, Jannie Allen, knew that the instrument so signed was a conveyance of a royalty interest in the property described in said deed to Gerald J. Creighton?"

Appellant insists that the court, by its charge, placed upon him the burden of proof to establish the negative of these answers, rightly contending that this burden rested on appellee. We do not make a further statement of this issue; the very point was before this court in Eichlitz v. Allen, Tex.Civ.App., 131 S.W.2d 43, and there ruled against appellant.

■ We give appellant's third and fourth propositions:

"3. Defendant, A. R. Allen, having pleaded and proved several distinct and separate defenses to plaintiff's cause of action, it was error for the court to refuse to submit, upon the timely request of said defendant, such separate and distinct defenses as embodied in defendant's requested special issues Nos. 6 through 17, inclusive (germane to Assignments 6 through 17, inclusive, and 19, Tr. 92–96 and 98).

"4. It was error for the court to refuse and not sustain objections of defendant, A. R. Allen, to the court's charge, timely presented, directing the court's attention to omissions of essential matters of defense pleaded and proved by the defendant and to additional matters of defense pleaded and proved by the defendant but not covered by separate and distinct

issues of the court's charge, all embodied in Sections (b) and (g) of Paragraph 9, Sections (c), (f) and (j) of Paragraph 10; Sections (f) and (g) of Paragraph 11, of defendant's objections to the court's charge (germane to Assignments 23, 26, 28, 31, 33a, 60 and 61, Tr. 98, 99, 100, 108 and 109)."

These propositions are multifarious; so much so that, in our judgment, we cannot review them under the rules. However, we will say that we have examined carefully all points advanced and overrule them as without merit.

■ We take from appellant's brief the following statement:

"S. E. Little, a witness for the plaintiff, on direct examination testified that he had known both the plaintiff Creighton and the defendant Allen for a long number of years; that he was friendly with both; that sometime last year (referring to the year 1937) he was present in Gerald J. Creighton's office when a certain statement was read to A. R. Allen, he, Creighton, and Allen being the only ones present; that only one statement was read aloud to Allen at that time by the plaintiff Creighton; that the statement read to Allen was the same as that copied and quoted in a second statement, which second statement was supposed to have been signed and sworn to by the witness Little; that the witness Little misplaced or lost the original of the second statement which Creighton gave him, and plaintiff then introduced in evidence the carbon copy of such second statement, to which introduction the defendant objected because it was irrelevant, immaterial and incompetent and hearsay, and a transaction with third parties. The court overruled defendant's objections, to which the defendant duly excepted.

"The substance of the quoted portion of the first statement was that in the early part of 1932, A. R. Allen told Gerald J. Creighton that he wanted to get from his two brothers acquittances and that he and Gerald Creighton made one or more trips to see his brothers at Anderson and Navasota, Texas; while on one of those trips Allen purchased a black hat and paid $5.00 for it; that Allen promised Gerald J. Creighton a piece of the minerals under his land before these trips were made in the early part of 1932 in order to pay him

for his work, time spent, his trouble and the expense covering these trips; that a quitclaim deed was obtained from J. H. and M. B. Allen some time in 1932; that some time in the latter part of 1932 A. R. Allen and his wife, Jannie Allen, executed a mineral conveyance to Gerald J. Creighton, this conveyance being made in payment of work already performed, and conveyed to Creighton 1-8th of the 1-8th royalty under the west 80 acres of Allen's land."

The court did not err in receiving the evidence complained of by this statement. It was admissible on Little's statement that the written instrument was read over to appellant, and that he admitted that the facts stated therein were true. 17 Tex. Jur. 543.

■ The court did not err in excluding certain abstracts of judgment against Judge A. W. Morris. Appellant contended that Judge Morris had a secret interest in the royalty deed, executed by him to appellee. These abstracts of judgment had no probative force on that issue. Nor did the court err in refusing to receive in evidence an abstract of judgment against appellee. True, appellee withheld his royalty deed from the record for many months and, in explanation, testified that he was threatened with a lawsuit. The fact that a judgment was abstracted against appellee was not evidentiary on any fact issue submitted to the jury. Appellant offered, as tending to impeach appellee's testimony, a letter, written by appellee to appellant, dated the 11th day of June, 1937, and a certain memorandum in regard to a conversation between appellant and appellee. The letter and the memorandum related to lands not in issue. If these instruments tended to impeach appellee's testimony, the impeachment was on a collateral matter and not pertinent to any issue submitted to the jury.

■ The court did not err in refusing W. R. Allen permission to intervene on motion for new trial; W. R. Allen took his assignment from appellant after the rendition of the judgment.

It follows that the judgment of the lower court should be in all things affirmed, and it is accordingly so ordered.

Affirmed.