Ronald Jackie YATES *v.* STATE of Arkansas

CR 89-200                                    785 S.W.2d 119

Supreme Court of Arkansas
Opinion delivered February 26, 1990

*Sullivan, Emmons & Kissee*, by: *Larry Dean Kissee*, for appellant.

*Steve Clark*, Att'y Gen., by: *Olan W. Reeves*, Asst. Att'y Gen., for appellee.

STEELE HAYS, Justice. Ronald Jackie Yates was convicted of two counts of rape and two counts of incest involving his niece, aged twelve. The trial court treated the two counts of incest as lesser included offenses of rape, dismissing the incest charges, and the defendant was sentenced pursuant to the verdict to consecutive twenty year sentences on the rape convictions.[1] Yates has appealed, contending that the trial court erred a) in denying a motion for a directed verdict of acquittal, b) in overruling an objection to improper closing argument by the prosecutor, c) in refusing to suppress a confession by the defendant, and d) in overruling appellant's objections to the prosecutor's cross-exami-

---

[1] We disagree that incest is a lesser included offense of rape. *See* Ark. Code Ann. § 5-1-110 (1987); Ark. Code Ann. § 5-26-202 (1987); Ark. Code Ann. § 5-14-103 (1987) *and see Williams* v. *State*, 11 Ark. App. 11, 665 S.W.2d 299 (1984).

nation of the defendant. We find merit in two of the points raised on appeal and therefore the judgment is reversed. We will discuss all the points preserved for review for purposes of remand.

I

The information alleged that appellant unlawfully engaged in sexual intercourse with his niece, a minor, twice in February 1987. When appellant was taken into custody, he first gave a written statement to the police denying any such involvement, but shortly thereafter admitted having had sexual relations with the child on two occasions in February 1987, signing a written statement to that effect. However, the victim testified to only one such incident and while her testimony was subject to some uncertainty due to an inability to recall events from two years previously, her testimony, given its strongest probative force, cannot support an inference that intercourse with the appellant occurred twice when the substance of her testimony was that it happened only once. While she may have made extra-judicial assertions to the effect that it happened on two successive days, there was no substantive proof to that effect and all she could say, beyond the single instance, was that she did not remember.

Appellant relies on Ark. Code Ann. § 16-89-111(d) (1987):

> A confession of a defendant, unless made in open court, will not warrant a conviction, unless accompanied with other proof that the offense was committed.

We conclude that there was no other proof of a second rape and it was error not to grant appellant's motion for acquittal as to one count of rape.

In her testimony, the girl was unable to fix the date when the sexual intercourse occurred. She testified that it was in September of 1986, but she also said the weather at the time was cold rather than hot. She based the September date on the fact that she and her family were staying temporarily with the appellant because their own house in Florida had burned. In May the child returned to Florida and sometime later she reported the incident to her mother, an aunt and to an examining physician. The physician's history fixed the date at "several weeks before" the victim's return to Florida.

We do not find the lack of certainty as to the date to be material. The defendant's confession stated it occurred in February and the victim's inability to fix a definite date does not defeat the charge. It is rare that youthful victims of sexual abuse can provide exactness as to when an offense occurred and this victim seems to have been mildly retarded. Any discrepancies in the testimony concerning the date of the offense were for the jury to resolve. *Burris* v. *State*, 291 Ark. 157, 722 S.W.2d 858 (1987). Ark. Code Ann. § 16-85-405(a)(2)(d) (1987).

## II

During closing argument the prosecutor made reference to the victim's mental retardation. Counsel for the appellant objected on the grounds that there was no evidence that the victim was retarded. Appellant contends it was error to overrule the objection, citing *Williams* v. *State*, 259 Ark. 667, 535 S.W.2d 842 (1976) and *Adams* v. *State*, 176 Ark. 816, 5 S.W.2d 946 (1928) for the rule that counsel may not go beyond the record to state facts that are prejudicial to the opposing party.

We first note that appellant's objection was not made at the first opportunity. The state had previously made reference in its closing argument that the victim was mentally retarded. The defense objected but on grounds relating to other subject matter in the state's argument and not at all to the mention of retardation. It was not until the state made a second mention of the topic that the defense objected. Having failed to make an objection at the first opportunity, appellant has waived any argument on appeal. *Young* v. *State*, 283 Ark. 435, 678 S.W.2d 329 (1984). Furthermore it seems to have been taken for granted by both sides that the victim had such limitations, as the defense itself had brought the topic up during trial in its cross-examination of both a police officer and the victim. Given the trial court's discretion in allowing every plausible inference from the evidence, we could not say there was an abuse of that discretion. *Cobbs* v. *State*, 292 Ark. 188, 728 S.W.2d 957 (1987); *Abraham* v. *State*, 274 Ark. 506, 625 S.W.2d 518 (1981); *Ford* v. *State*, 276 Ark. 98, 633 S.W.2d 3 (1982).

## III

We disagree with appellant's contention that his confession was coerced, was involuntary, and that he was arrested

illegally since he was not told that he was under no obligation to appear for questioning at police headquarters. A.R.Cr.P. Rule 2.3. The state points out that the latter argument is being raised for the first time on appeal. The abstract fails to demonstrate how that point was preserved and since the appellant has not replied to the argument, we will not address that phase of the argument.

We have independently reviewed the testimony at the suppression hearing, as required under the law, *McDougald* v. *State*, 295 Ark. 276, 748 S.W.2d 340 (1980), and find appellant's arguments unconvincing. He testified that he was told if he would confess he would be assured of a suspended sentence, that he had little or no education, could not read and was intimidated by the interrogation procedures in that one of the officers shouted at him and banged the desk repeatedly with a clenched fist. But these assertions were disputed by the interrogating officers and we do not as a rule overturn the findings of the trial court on issues of credibility. *Hanson* v. *State*, 296 Ark. 385, 757 S.W.2d 932 (1988).

## IV

The other point which makes reversal necessary has to do with the cross-examination of the defendant by the prosecutor, during which the following occurred:

Q: Mr. Yates, you mentioned that you and your wife were divorced. Why, why'd y'all get divorced?

A: Well, Sir, it wasn't relation problems. There's other difficulties through our family that I'd rather not say.

Q: Would it surprise you to know that, was your wife in error when she swore in court that y'all were divorced because of the loss of her breast and hair and other medical problems and that you continually and maliciously made fun of her appearance?

BY MR. JARBOE:

Judge. . .        .

Q: And told friends and family that you did not . . .

BY MR. JARBOE:

I object to this. This is collateral. It's very prejudicial. I ask for a mistrial.

BY MR. STALLCUP:

If Your Honor please, the subject of divorce was opened up. I asked him the reason they were divorced and he gave me the reason.

BY THE COURT:

Well, it's prejudicial versus probative and objection overruled. Go ahead.

Q: Okay. Did you—let me back up. Was the reason that after your wife lost her hair and breast and had these problems, medical problems, that you continually and maliciously made fun of her appearance and told folks, the friends and the family that you didn't want to be seen with her in public?

BY MR. JARBOE:

May we approach the bench?

BY THE COURT:

Yes.

(Thereupon, the following is held at the bench out of the hearing of the jury.)

BY MR. JARBOE:

This is exactly the stuff the rules talk about on inquiring into prior acts, bad conduct, that sort of thing. This whole thing about the divorce.

BY THE COURT:

This can come in under 404(b).

BY MR. JARBOE:

Well, I object to it and I contend it's prejudicial.

BY THE COURT:

Overruled.

We do not agree, as the state urges, that the defense opened the door for such questioning by presenting the defendant as a model husband and family man. To the contrary, in opening statement counsel for the defendant told the jury the defendant had had mental problems and a serious drinking problem. The defense did represent that the defendant had had no prior involvements with the law, including even a traffic violation, was a conscientious worker and a helpful neighbor. But we do not equate these implications as suggesting he was a dutiful and caring husband. There was testimony, to be sure, that the defendant purchased a waterbed for his ex-wife's back problems, but that evidence was aimed at the victim's testimony that the rape occurred on a hard bed.

■ This line of questioning was plainly intended to depict the defendant as capable of the most detestable kind of insensitivity—taking pleasure in pointing out the physical effects of his wife's struggle with cancer. The prejudice can hardly be doubted nor, we think, overstated. If its probative value was significant we would not readily overturn the trial court's tacit approval by permitting it over timely objections, but we cannot conclude that the defense first presented the defendant to the jury as one solicitous of his ex-wife's well-being, and, therefore, we believe the matter was lacking in relevance but fraught with mischief.

Reversed and dismissed in part, reversed and remanded in part.