Carl COOK and Sandra Burris *v.* STATE of Arkansas

CA CR 00-983                                          68 S.W.3d 308

Court of Appeals of Arkansas
Division I
Opinion delivered February 20, 2002

448

*Sam T. Heuer* and *Lessmeister Law Firm, PLLC*, by: *James J. Lessmeister*, for appellant Carl Cook.

*Dale W. Finley*, for appellant Sandra Burris.

*Mark Pryor*, Att'y Gen., by: *Brad Newman*, Ass't Att'y Gen., for appellee.

LARRY D. VAUGHT, Judge. Appellant Carl Cook was charged with delivery of methamphetamine, conspiracy to deliver methamphetamine, aggravated robbery, and theft of property. Appellant Sandra Burris was charged with delivery of methamphetamine and conspiracy to deliver methamphetamine. Appellants were tried together and were both represented by the same counsel

at trial, but have retained separate counsel on appeal. Cook was convicted of delivery, conspiracy, and theft, and was sentenced to 420 months' imprisonment in the Arkansas Department of Correction. Burris was convicted of conspiracy to deliver and sentenced to six years' probation conditioned upon her serving 120 days in the Pope County Detention Center.

On June 25, 1999, Tom Alexander (a confidential informant) met with investigators of the Fifth Judicial District Drug Task Force (DTF) to arrange a controlled purchase of methamphetamine from appellant, Carl "Bubba" Cook. On July 12, 1999, Alexander arranged to purchase one ounce of methamphetamine from Cook. Investigators with the DTF met with Alexander prior to the arranged purchase and installed a body wire, provided him with a tape recorder, and gave him $1,200 in "buy" money. At approximately 10:30 p.m. on July 12, Alexander entered the residence of Carl Cook and Sandra Burris on Atkins Bottom Road in Pope County, Arkansas. In an area outside of the appellants' home, Alexander gave Cook the $1,200 in exchange for one ounce of methamphetamine. The transaction was recorded on audio tape. Appellant Burris was inside the home during the "buy." She was monitoring a police scanner and communicated to Cook that she could hear Cook's conversation with Alexander on the scanner. Cook demanded that Alexander follow him to the house for questioning. While walking to the residence, Alexander discarded the body wire and tape recorder before being questioned by Cook. Once inside the residence, Cook ordered a strip search. When Alexander's shirt was removed, a piece of tape was discovered. Before Cook released him, Alexander was robbed, threatened, and kept against his will for approximately two hours.

The following day, a search warrant was executed for the Cook residence for the body wire, recorder, and money. The tape recorder was recovered during the search. The following day, a van was stopped that had been seen at the Cook residence during prior surveillance of his property. The driver, David Kidd, was detained on an unrelated chancery court matter. During a routine inventory search of the van, the body wire that Alexander discarded on Cook's property was discovered.

On appeal, Cook alleges that the tape recorder and the body wire were illegally seized and should have been suppressed at trial. Additionally, he argues that the trial court committed "plain error" by allowing the same attorney to represent both defendants, and by demanding that Cook carry the burden of proving that he had been

pardoned from a prior conviction by the Governor of the State of Arkansas. Appellant Burris claims on appeal that the trial court erred in its denial of her motion for directed verdict on the charge of conspiracy to deliver methamphetamine levied against her.

## I. Sandra Burris's Appeal

Burris was convicted of conspiracy to deliver methamphetamine for her involvement in the arranged "buy" that occurred on July 12, 1999. She made timely motions for directed verdict at both the close of the State's case-in-chief and at the close of all the evidence. The trial court denied both motions.

Burris argues that there was no proof of the requisite "agreement" to commit an offense. While the State characterized her as a "lookout," Burris maintains on appeal that there was no proof that she was doing anything other than checking on police who made themselves conspicuous in the area. While Burris admits that she did report to Cook that she heard his conversation with Alexander on the scanner, she denies that it is proof that she was part of a conspiracy.

A directed-verdict motion is a challenge to the sufficiency of the evidence. The test for determining sufficiency of the evidence is whether there is substantial evidence to support the verdict. *Wilson v. State*, 320 Ark. 707, 898 S.W.2d 469 (1995). Evidence is substantial if it is of sufficient force and character to compel reasonable minds to reach a conclusion beyond suspicion and conjecture. *Id.* On appeal, we review the evidence in the light most favorable to the State, considering only that evidence that tends to support the verdict. *Id.*

Arkansas Code Annotated section 5-3-401 (Repl. 1997) provides:

> A person conspires to commit an offense if with the purpose of promoting or facilitating the commission of any criminal offense:
>
> (1) He agrees with another person or persons:
>
> (A) That one (1) or more of them will engage in conduct that constitutes that offense; or

(B) That he will aid in the planning or commission of that criminal offense; and

(2) He or another person with whom he conspires does any overt act in pursuance or furtherance of the conspiracy.

A conspiracy may be proven by the circumstances and the inferences to be drawn from the course of conduct of the alleged conspirators. *Jones v. State*, 45 Ark. App. 28, 871 S.W.2d 403 (1994). A conspiracy may be shown by circumstantial evidence, and the State need not offer direct proof of a prior agreement. *Henry v. State*, 309 Ark. 1, 828 S.W.2d 346 (1992).

■ Here, the State presented evidence that Burris acted as a lookout for Cook. While Cook was gathering the methamphetamine that Alexander had purchased, Burris alerted Cook that "[e]verything you are talking about I can hear on the scanner." This evidence established that Burris was aware of Cook's illegal activity and aided him in the pursuit of the illegal activity. Therefore, her conviction was supported by substantial evidence, and the trial court did not err in its denial of her motions for directed verdict.

## II. Carl Cook's Appeal

### a. Fourth Amendment Violations

Appellant Cook argues 1) that the warrant to search his house for Alexander's body wire and other items was invalid, and therefore the tape recorder obtained in the search should be suppressed, and 2) that the inventory search of the van Kidd was driving was a pretext for an illegal search, and therefore the missing body wire discovered during the inventory search should be suppressed.

■■ When an appellant claims that the challenged evidence was erroneously admitted in violation of the Fourth Amendment's prohibition of unreasonable search and seizure, he must demonstrate how he was prejudiced by its admission. *See Schalski v. State*, 322 Ark. 63, 69-70, 907 S.W.2d 693, 697 (1995). Appellant Cook has failed to demonstrate any prejudice resulting from the alleged violations. The jury heard a recording of the drug "buy" between Cook and Alexander. The recording was made by the police at a

remote location. The remote recording was not dependent on the introduction of the body wire and the tape recorder.[1] Additionally, Alexander testified to events that followed Cook's discovery of the recording device. The introduction of the body wire and tape recording were ancillary to the heart of the State's case, and no prejudice resulted from their introduction, regardless of the propriety of their admissibility.

### b. Ineffective Assistance of Counsel

Appellant Cook argues on appeal that because his trial counsel also represented his co-defendant, Burris, his defense was prejudiced by creating a conflict of interest, and he was therefore denied his constitutional right to effective assistance of counsel. In response, the State argues that this issue is not preserved for appeal because it was not raised below. Cook argues that it falls within the "plain error" exception to the contemporaneous objection rule, and that the trial judge was obligated to make an inquiry into the conflict on his own motion.

A motion for severance was filed prior to trial by Burris. Cook references the closing statement of the motion to claim that the motion was filed on behalf of both Cook and Burris. Additionally, Cook claims that his counsel orally modified his motion to include both defendants during argument before the trial court on this issue. Burris's severance motion was the only means by which the dual representation issue was raised, and Cook has not argued that the denial of the motion to sever was error, but instead he has argued that he was denied effective assistance of counsel. However, ineffective-assistance-of-counsel claims are typically raised in post-conviction relief proceedings under Rule 37 of the Arkansas Rules of Criminal Procedure. In such a proceeding, as the State points out, the parties have an opportunity to develop a record on the conduct of the defense counsel, and the defense counsel can testify in his own behalf.

Appellant's ineffective-assistance-of-counsel argument was not raised below, and we will generally not consider errors raised for the first time on appeal. See Nichols v. State, 69 Ark. App. 212, 11 S.W.3d 19 (2000). There are only four exceptions to this rule: (1) when error is made by a trial court without knowledge of the

---

[1] The tape found in the tape recorder was not introduced at trial. The State introduced the cassette tape made by police at the remote location.

defense counsel who thus has no opportunity to object; (2) when a trial court should intervene on its own motion to correct a serious error by admonition or by mistrial; (3) when evidentiary errors affect a defendant's substantial rights although they were not brought to the court's attention; and (4) in death-penalty cases when prejudice is conclusively shown by the record and we would unquestionably require the trial court to grant relief under Ark. R. Crim. P. 37; in all other circumstances a contemporaneous objection is required to preserve a point for review. *Marshall v. State*, 316 Ark. 753, 875 S.W.2d 814 (1994).

■ ■ Appellant Cook argues that the second exception, "when a trial court should intervene on its on motion to correct a serious error by admonition or mistrial," is applicable. The "serious error" exception was articulated in *Wicks v. State*, 270 Ark. 781, 606 S.W.2d 366 (1980), and the court explained that the use of this exception is a mere possibility, for it has never occurred in any case. Because appellant is raising an ineffective-assistance-of-counsel argument, instead of an immediate and egregious trial error, we do not believe that this is an appropriate case for application of the "serious error" exception. Therefore, the ineffective-assistance-of-counsel issue is not preserved and accordingly, we affirm on this point.

*c. Pardon*

Appellant Cook argues that he is entitled to a new trial because a pardoned sentence was introduced during the sentencing phase of his trial. When the State offered a certified copy of a 1981 conviction for carrying a prohibited weapon, Cook's attorney informed the court that his client maintained that the conviction had been pardoned. The prosecutor noted that the NCIC printout indicated a pardon for a 1979 conviction but not for the 1981 conviction. The judge asked if the appellant could produce any evidence of the pardon, and counsel noted that the circuit clerk's office was closed because it was 9:00 p.m. Counsel never requested a continuance to procure the clerk's record of the alleged pardon.

■ ■ The court asked several times if appellant wanted to offer any testimony, and counsel stated that he would offer appellant's testimony on the issue of the pardon for the record, but that he did not want to put it before the jury. However, the sentencing continued and the record does not reflect that the appellant ever testified regarding the pardon. The only indication that the appellant was pardoned was the claim of his attorney, and it is well settled

that arguments of counsel are not evidence. *Wright v. State*, 67 Ark. App. 365, 1 S.W.3d 41 (1999) (citing *Johnson v. State*, 326 Ark. 430, 934 S.W.2d 179 (1996)). Once the State offered the certified copy of the conviction, it had established a *prima facie* case, and the burden shifted to the appellant to establish the pardon. *Wright, supra.* Because no evidence was introduced, the conviction was properly admitted. No motion for new trial or for resentencing was ever filed. Cook attempted to raise the issue of the pardon to the trial court when the case was initially remanded to settle the record on an unrelated issue, but the trial court correctly refused to reconsider the pardon at that time.

The State also argues that the admission of the pardoned offense did not prejudice Cook because he was sentenced to less than the potential maximum sentence, and because he was not charged as an habitual offender. The admission of the prior offense did not change the range of available sentences, nor did Cook receive the maximum sentence available to the jury.

In order to prevail on his claim, Cook must do more than allege prejudice, he must demonstrate it. *Snell v. State*, 290 Ark. 503, 721 S.W.2d 628 (1986), *cert. denied*, 490 U.S. 1076 (1988). We will not reverse on the mere potential for prejudice. *Sheridan v. State*, 313 Ark. 23, 852 S.W.2d 772 (1993). Therefore, because Cook cannot show that he was prejudiced by the admission of the conviction during the sentencing phase of the trial, his claim of error must fail. Accordingly, we affirm the trial court on this point.

Affirmed.

HART, J., agrees.

GRIFFEN, J., concurs.

WENDELL L. GRIFFEN, Judge, concurring. I agree that appellants' convictions should be affirmed. However, I write separately to express dismay with the conduct of the Pope County Prosecutor's Office and the way it dealt with Carl Cook's pardon during the sentencing phase.

Even though we remanded the case to settle the record regarding the ruling on the motion to suppress, the State remained under a continuing obligation to make truthful disclosures to the court, including the disclosure of exculpatory evidence relating to Carl Cook's sentence. Further, contrary to the representations made at

trial by the prosecutor in this case, David Gibbons, the State knew that Cook's firearm conviction had been pardoned. Despite being told by Cook's counsel that Cook had been pardoned and despite a clear ethical obligation to 1) be accurate in assertions he made to the court and 2) provide exculpatory evidence regarding sentencing, the record shows that Gibbons did not reveal that his office had documentation of Cook's pardon.

The State's continuing obligation to provide truthful disclosures, including exculpatory evidence regarding sentencing, is recited in the Arkansas Rules of Criminal Procedure, the Arkansas Model Rules of Professional Conduct, and the American Bar Association Model Rules of Professional Conduct. Pursuant to Arkansas Rule of Criminal Procedure 17.1(d), a prosecutor is under a continuing duty to disclose exculpatory evidence, that is, evidence within "his knowledge, possession, or control, which tends to . . . reduce the punishment therefore." It is well settled that the prosecution's suppression of evidence favorable to an accused violates the defendant's due process rights, where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. *See Brady v. Maryland*, 373 U.S. 83 (1963).

It is also well settled that the purpose of the discovery rules is to require the State to disclose its evidence to the defendant in time for the defendant to make beneficial use of the information. *See Thomas v. State*, 312 Ark. 158, 847 S.W.2d 695 (1993). Arkansas Rule of Criminal Procedure 17.2(a) requires the prosecuting attorney to perform his obligations under Rule 17.1 "as soon as practicable."

In addition, Arkansas Model Rules of Professional Conduct 3.3 and 3.4 require an attorney to provide truthful disclosures to the court and opposing party. Arkansas Rule of Professional Conduct 3.8 and American Bar Association Model Rule of Professional Conduct 3.8 mirror each other and set out special rules that apply to prosecutors. These rules state, in relevant part, that a prosecutor in a criminal case shall:

> make timely disclosure to the defense of all evidence or information known to the prosecutor that tends to negate the guilt of the accused or mitigates the offense, and, in connection with sentencing, disclose to the defense and to the tribunal all unprivileged mitigating information known to the prosecutor, except when the prosecutor is relieved of this responsibility by a protective order of the tribunal[.]

Where the State seeks to admit evidence of a prior conviction for the purposes of sentence enhancement, the State has the burden of proving that a defendant has prior conviction. *See Byrum v. State*, 318 Ark. 87, 884 S.W.2d 248 (1994). Once *prima facie* evidence is introduced, the burden shifts to the appellant to show proof that the conviction is no longer valid and should not be considered. *See Wright v. State*, 67 Ark. App. 365, 1 S.W.3d 41 (1999). Here, the State offered a certified copy of appellant's February 13, 1981 conviction for possession of a firearm by certain persons. The State also submitted a July 21, 1997 order of probation entered for possession of drug paraphernalia, a felony, and possession of a controlled substance, a misdemeanor. Cook's counsel, Dale Finley, informed the court and Gibbons that Cook maintained that he had been pardoned for all offenses prior to the 1980s. In open court, Gibbons responded: "The NCIC [National Crime Information Computer] shows that there was a note that this is a felon in possession and the underlying felony, which was entered in 1979 in Jefferson County was pardoned, but not this, and there's nothing to indicate that. There's got to be some record of it." Gibbons referred to the NCIC printout, but did not introduce it into evidence. It is, however, part of the record.

As Gibbons stated, the NCIC does show a pardon for a felony charge entered in Jefferson Country based on an arrest made in 1979. However, contrary to Gibbons's assertion, there *was* documentation of Cook's pardon on the face of the NCIC report. This report shows that on February 13, 1981, Cook was charged with aggravated assault and possession of a firearm by certain persons. Beneath the information on the possession charge at issue here, the report plainly indicates: "Start Date: 1981/03/04 Status Pardoned." Two lines further down the report states: "Other Info: Pardon 040391/Right Poss FA."[1]

Here, Cook was charged by a criminal information on July 15, 1999; he was arraigned on July 20, 1999. The trial began on January 18, 2000, and concluded on January 20, 2000. The NCIC report was not requested until January 18, 2000 (the day the trial began), and the pen pack was not obtained until January 19, 2000. Thus, the State obtained the pen pack showing appellant's invalid

---

[1] It appears that the NCIC report was apparently not admitted into evidence below, but is part of the record on appeal, marked by the handwritten notation, "St # 14." However, State's Exhibit 14, as found in the record, is the search warrant for Burris's grandmother's apartment. Nonetheless, the record clearly shows that Gibbons expressly relied on the report in responding to Cook's assertion that he had been pardoned.

conviction *after* it received the NCIC report indicating that his firearms possession charge had been pardoned. Despite indications on the face of the NCIC report that appellant was pardoned for the firearms possession charge, the State asks us to believe that the prosecutor acted in good faith in relying on the report. However, pursuant to *Brady v. U.S., supra,* the good faith or bad faith of the prosecutor is irrelevant. What is relevant is that, had the State cared to do so, it had ample opportunity to discover that Cook had been pardoned for the possession conviction it chose to enter into evidence against him during the sentencing phase of the trial.

This case vividly illustrates why the State's burden should not shift *unless* the State presents evidence of a valid conviction. Lawyers are familiar with the practice of Shepardizing a case to determine whether it remains valid precedent. There should be an analogous requirement imposed upon the State to ensure that when it introduces a certified copy of a conviction, that conviction is valid. Such a requirement is simply a logical and just extension of the State's duty to provide exculpatory evidence. However, in this case, Gibbons made untruthful assertions about Cook's conviction history premised on the NCIC report when the report declared on its face that Cook had been pardoned for the firearms possession charge. Whatever the reasons were for not disclosing that material fact, nondisclosure was inexcusable.